Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California  90067
(213) 863-4276

Ashley Keller *(pro hac vice forthcoming)*
  ack@kellerlenkner.com
Travis Lenkner *(pro hac vice forthcoming)*
  tdl@kellerlenkner.com
Marquel Reddish *(pro hac vice forthcoming)*
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DEVAN COSTA and AHMED WADSWORTH, <br><br> Plaintiffs, <br><br> vs. <br><br> POSTMATES INC. <br><br> Defendant. | Case No. 3:19-cv-03046 <br><br> **COMPLAINT** <br><br> 1. Failure to Pay Minimum Wage and Overtime Under the FLSA <br> 2. Failure to Pay Minimum Wage and Overtime Under the California Labor Code <br> 3. Violations of the Local Wage Ordinances <br> 4. Violation of Unfair Competition Law <br><br> **(Jury Trial Demanded)** |

## INTRODUCTION

1. Plaintiffs work as couriers for Postmates. Together with other Postmates couriers, Plaintiffs form the core workforce necessary for Postmates to make deliveries—the service that generates Postmates's revenue. Rather than treat Plaintiffs as employees, Postmates misclassifies Plaintiffs as independent contractors, which means it fails to pay Plaintiffs a minimum wage; fails to pay them overtime; and fails to provide them with various other protections required by federal, state, and local law.

2. The difference between what Postmates should pay Plaintiffs and what it does pay Plaintiffs is significant. The minimum wage in Los Angeles, which applies to Plaintiffs, is $13.25 per hour. But Postmates frequently pays Plaintiffs substantially less than $13.25 per hour after expenses.

3. Postmates does not pay Plaintiffs any overtime when they work more than 40 hours in a week.

4. Plaintiffs now file this Complaint against Postmates to collect what it owes them under federal, state, and local law.

## PARTIES

5. Plaintiff Devan Costa is an adult resident of Los Angeles, California and, until recently, worked fulltime as a courier for Postmates.

6. Plaintiff Ahmed Wadsworth is an adult resident of Los Angeles, California and works fulltime as a courier for Postmates.

7. Respondent Postmates Inc. is a Delaware corporation headquartered at 201 Third Street, Suite 200, San Francisco, California 94103.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.* The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' claims arising under state and local law because the claims are so related to the FLSA claim that they form part of the same case or controversy.

9. The Court has personal jurisdiction over Postmates because Postmates has its headquarters and principal place of business in California.

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## INSTRADISTRICT ASSIGNMENT

11. This action is properly assigned to the San Francisco Division of this District, pursuant to Civil Local Rule 3-2(c) and (d), because a substantial part of the events or omissions that give rise to the claim occurred in San Francisco County, which is served by the San Francisco Division.

## FACTUAL ALLEGATIONS

**A.    COURIERS ARE INTEGRAL TO POSTMATES'S BUSINESS.**

12. Sam Street, Sean Plaice, and Bastian Lehmann founded Postmates in 2011.

13. As it describes itself, "Postmates has established itself as a market leader in the fast-growing on-demand delivery sector."[1]

14. Effectively all of Postmates's revenue comes from making deliveries to customers. The most significant part of that revenue comes from delivering food.

15. Postmates partners with various merchants such as restaurants and retailers.

16. Customers order food and other items from Postmates partner merchants by using Postmates's website or smartphone app.

17. When a customer places an order, Postmates assigns a nearby courier to pick up the order from the merchant and deliver it to the customer.

18. Consumers uniformly associate Postmates's brand with its on-demand delivery service.

---

[1] Postmates Press Release (Sept. 18, 2018), *available at* https://www.prnewswire.com/news-releases/postmates-secures-300m-in-venture-funding-led-by-tiger-global-management-and-announces-record-breaking-year-of-growth-accelerating-position-as-the-on-demand-industry-leader-300714344.html.

19. In a recent advertising campaign, Postmates associated its name with the verb deliver, urging hungry customers to "Postmates It."[2]

20. Wikipedia—a crowd-sourced, online encyclopedia designed to capture the consensus view of its users—states that "Postmates is an American logistics company that operates a network of couriers who deliver goods locally."

21. Postmates refers to itself as "the on-demand 'anything' delivery company."[3]

22. From 2013 to 2015, Postmates's marketing tagline was "Everyone's Favorite Delivery Company."[4]

### B. POSTMATES COURIERS ARE EMPLOYEES.

23. Postmates couriers receive delivery requests through the courier version of the Postmates app called the "Fleet App."

24. Couriers can go "online" by opening the app on their smartphones. That signals to Postmates that they are ready to make deliveries.

25. Postmates then sends a new delivery request to the courier. Couriers have no control over when, whether, or how many deliveries Postmates will route to them. The Fleet App does not allow couriers to specify that they wish to receive deliver requests for any customer or merchant.

26. Similarly, in the support section of the customer version of the app, in response to the question "Can I request a specific Postmate?," Postmates states "No. Instead of choosing a specific Postmate, our system will automatically locate the Postmate best suited for your delivery."

27. Postmates gives couriers only a limited amount of time to decide whether to accept a delivery request. If a courier declines the request or takes too long to decide, then Postmates withdraws the request and sends it to another courier.

---

[2] Lindsey Rittenhouse, "Postmates's New AOR Aims to Separate the Brand From 'Food Porn,'" ADWEEK (April 9, 2019), *available at* https://www.adweek.com/creativity/postmates-new-aor-aims-to-separate-the-brand-from-food-porn/.
[3] Postmates Press Release (Dec. 13, 2018), *available at* https://postmates.com/press-releases/postmates-serve.pdf.
[4] https://web.archive.org/web/20130603212751/https:/www.postmates.com/

28. Postmates customers do not pay couriers for delivering their Postmates order. Rather, customers pay Postmates for providing delivery services, and Postmates independently pays a fee to the couriers for the work they have provided to Postmates. Postmates offers a "Postmates Unlimited" service option, under which customers pay Postmates a flat rate for unlimited deliveries that is unrelated to whether and how often a particular courier makes a delivery.

29. The exact amounts that Postmates compensates its couriers vary based on location. But for all couriers, Postmates's compensation is calculated by combining the following: a set amount when the courier picks up the order from the merchant, a set amount when the courier delivers the order to the customer, a certain amount per minute the courier spends at a merchant waiting to pick up the order, and a certain amount per mile that the courier drives from the merchant to the customer.

30. Postmates's compensation encourages couriers to complete more deliveries quickly over deliveries that require greater travel distance or time. For example:

- Regardless of the compensation calculation, Postmates guarantees its couriers that it will pay them at least $4 per delivery.
- Postmates has various bonus programs that apply if a courier can complete a certain number of deliveries in a set period.
- Postmates does not compensate its couriers for time spent driving to the merchant, time spent in traffic driving from the merchant to the customer, or time spent connecting with the customer once the courier arrives at the customer's location (despite requiring couriers to wait up to 5 minutes for a customer).
- Postmates does not pay couriers for time spent online on the Fleet App waiting for new deliveries to come through.
- Postmates's courier website acknowledges that quickly completing trips helps create more revenue for couriers: "Completing deliveries as quickly as possible

increases your tips, so it's smart to only accept deliveries you know you can complete in a timely manner."

– Postmates punishes couriers that are unable to complete timely trips. Using a secret algorithm unknown to couriers, if the Fleet App determines that too many of a couriers' recent deliveries have been late, the courier will "be automatically paused from accepting new delivery offers." That pause can occur even if the only reason deliveries have been delayed is that the deliveries offered to a courier required the courier to travel far between merchant and customer.

31. Because Postmates bases its compensation mainly on the number of completed deliveries and not the amount of time spent on the Fleet App, a Postmates courier seeking to maximize pay would always accept deliveries that he or she could complete quickly (e.g., shorter distances or in lighter traffic areas). And he or she would decline deliveries that take greater amounts of time to complete (e.g., customers that live far away from the merchant or deliveries that require couriers to take high-traffic routes).

32. To ensure that Postmates's customers can obtain deliveries regardless of distance or traffic, Postmates does not allow couriers to know where customers want their orders to be delivered before couriers accept or decline deliveries. Instead, the Fleet App tells a courier where the customer wants the order to go only after the courier has driven to the merchant, picked up the order, and selected "Start Drop-off" on the Fleet App.

33. Because Postmates does not provide a courier with the delivery address until after the courier has already driven to the merchant—driving time for which Postmates does not compensate the courier—it is impossible for the courier to know how quickly he or she can make any given delivery. Without knowing how fast they can make a delivery at the time of acceptance, couriers are unable to use any skill or judgment to maximize profit by choosing more profitable deliveries over less profitable ones.

34. Postmates sets the delivery fee that it charges its customers; couriers cannot adjust the fees.

35. Postmates sets the rate of pay in a given area; couriers cannot adjust that amount, either.

36. Postmates's policies state that a courier "*may* still receive a payout" if the customer cancels an order midway through an order. But Postmates decides whether, when, and how much it will reimburse a courier for a canceled order.

37. Because Postmates classifies its couriers as independent contractors, rather than employees, it makes no effort to ensure that it pays the required minimum wage in the relevant jurisdiction or any required overtime.

38. Postmates does not reimburse couriers for any fees they incur while on a delivery, including parking tickets and fees or tickets for moving violations.

39. Postmates does not comply with state and local rest-break or sick-time laws for its couriers, or with any federal, state, or local wage, sick-time, or other employee-benefit notice requirements for its couriers.

40. Postmates makes it difficult for couriers to understand their true rate of pay.

41. The pay statements Postmates makes available to couriers do not track the full number of hours worked or mileage driven, both of which a courier would need to determine his or her true net hourly pay in a given week.

C. **POSTMATES IS VIOLATING FEDERAL, CALIFORNIA, AND LOCAL LAWS.**

42. Courts determine whether a worker is an employee under the Fair Labor Standards Act by looking to the economic substance of the relationship, not the label adopted by an employer. *See Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

43. In assessing that economic relationship, courts look to a non-exhaustive list of factors that includes:

- The degree of the employer's right to control how the employee should perform the work;
- the worker's opportunity for profit or loss depending upon his or her managerial skill;

    – the investment of the worker relative to his or her putative employer and whether he or she employs helpers;

    – whether the service rendered requires a special skill;

    – whether the worker has an ongoing relationship with the employer; and

    – whether the service rendered is an integral part of the employer's business.

44. The ultimate inquiry is whether the worker is genuinely operating an independent business, free from the economic dominance of an employer.

45. Under California law, a worker is classified as an employee unless the hiring business proves that:

    A. The worker is free from the control and direction of the hiring business;

    B. the worker performs work that is outside the usual course of the hiring entity's business; <u>and</u>

    C. the worker is customarily engaged in an independently established trade, occupation, or business and takes the usual steps to establish and promote his or her independent business separate from working for an employer.

*Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 925 (2018), *reh'g denied* (June 20, 2018).

46. Plaintiffs qualify as employees under both federal and California law.

47. Postmates has exercised significant control over Plaintiffs by determining, among other things, which deliveries it offers them; how much it will pay them for each delivery; when it will provide them with critical information about each delivery; and how to resolve disputes and complaints regarding each delivery.

48. Because Postmates sets all the material terms of driving for Postmates, Plaintiffs cannot use managerial skill to increase their profits; their compensation turns predominately on the number of deliveries they complete and whether they respond to the financial incentives Postmates sets for them.

49. Plaintiffs have invested minimal to no capital in their work for Postmates, and they do not operate a transportation-based business independent of Postmates.

50. Plaintiffs have brought no specialized skill to the job.

51. Plaintiffs have worked for Postmates on an ongoing basis.

52. Plaintiffs' work is integral to Postmates as they, and other couriers, make up the core workforce that provides Postmates's deliveries.

### D. BY MISCLASSIFYING THEM AS INDEPENDENT CONTRACTORS, POSTMATES HAS HARMED PLAINTIFFS.

53. Plaintiffs drive or have driven for Postmates in the Los Angeles area.

54. Plaintiffs' true wages are difficult to calculate accurately, as Postmates's wage statements do not contain weekly hours or mileage figures.

55. Nevertheless, it is clear that Postmates has regularly failed to pay Plaintiffs the required minimum wage, after accounting for their expenses.

56. Postmates never pays Plaintiffs a premium wage when they work overtime.

57. Postmates does not give Plaintiffs rest breaks, paid sick time, or notice of any of their employment rights under state or local law.

## CAUSES OF ACTION

### COUNT I

### FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 206, 207

### MINIMUM-WAGE & OVERTIME VIOLATIONS

58. Postmates has at least two employees and has employees who handle and work with goods that have been moved in interstate commerce.

59. Postmates has annual gross sales or business greater than $500,000.

60. Plaintiffs are employees entitled to the protections of the Fair Labor Standards Act.

61. Postmates has violated the Act by willfully failing to regularly pay Plaintiffs the minimum wage and overtime the Act requires.

62. Plaintiffs seek unpaid wages, liquidated damages, interest, and attorneys' fees and costs.

### COUNT II

### CALIFORNIA LABOR CODE, WAGE ORDER NO. 9

### MINIMUM-WAGE & OVERTIME VIOLATIONS

63. Plaintiffs are employees entitled to the protections of the California Labor Code as interpreted by Wage Order 9 of the Industrial Welfare Commission.

64. Postmates has violated the California Labor Code by failing to pay Plaintiffs the minimum wage and overtime it requires.

65. Plaintiffs seek unpaid wages, interest, and attorneys' fees and costs.

### COUNT III

### APPLICABLE MUNICIPAL CODES

### MINIMUM-WAGE, OVERTIME, SICK TIME, NOTICE VIOLATIONS

66. In various weeks, Plaintiffs have qualified as employees under the following municipal minimum wage ordinances:

- Los Angeles Municipal Code Ch. XVIII
- Los Angeles County Code Chs. 8.100, 8.101

67. Postmates has violated those ordinances by failing to pay Plaintiffs minimum wage, and by failing to comply with the applicable sick time and notice requirements.

68. Plaintiffs subject to those violations seek unpaid wages, liquidated damages, interest, statutory penalties, and attorneys' fees and costs.

## COUNT IV

## UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200

## UNFAIR AND UNLAWFUL BUSINESS PRACTICES

69. By committing the legal violations described above, Postmates has committed unfair and unlawful business practices in violation of the California Unfair Competition Law.

70. Plaintiffs seek restitution and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

71. Each Plaintiff seeks an award against Postmates that incorporates the below relief, but declines to specify an amount in controversy at this time:

    (a) A decision that the policies and practices complained of are unlawful under federal, California, and local law;

    (b) An award of appropriate equitable relief to remedy Postmates's violations of federal, California, and local law;

    (c) An award of damages, statutory penalties, and restitution to be paid by Postmates according to proof;

    (d) An award of general damages according to proof;

    (e) An award of reasonable attorneys' fees and costs incurred in filing this action under 29 U.S.C. §§ 206, 207, California Labor Code §§ 218.5 and 1194, Code of Civil Procedure § 1021.5, and other applicable laws;

    (f) An award of pre- and post-judgment interest; and

    (g) Such further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

72. NOW COME Plaintiffs, by and through their Attorneys, and hereby demand a trial by jury on all issues triable by jury.

| | | |
|---|---|---|
| 1 | Dated: June 3, 2019 | Respectfully submitted, |

/s/ Keith A. Custis
Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice forthcoming*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I shall cause the foregoing document to be served on Postmates Inc. at its headquarters at 201 Third Street, Suite 200, San Francisco, California 94103.

Dated: June 3, 2019                               /s/ Keith A. Custis