Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| DEVAN COSTA and AHMED WADSWORTH, <br><br> *Plaintiffs,* <br><br> vs. <br><br> POSTMATES INC. <br><br> *Defendant.* | Case No. 4:19-cv-03046-JST <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION REGARDING MOTION TO COMPEL ARBITRATION AND STAY CIVIL PROCEEDINGS** <br><br> **Hearing:** <br> **Date:** May 6, 2020 <br> **Time:** 2:00 p.m. <br> **Judge:** Hon. Jon S. Tigar |

## I.  INTRODUCTION

Postmates has tried to compel Plaintiffs to arbitrate under an arbitration clause it is continuously breaching by participating in a class proceeding. As this Court has already found, agreements to arbitrate are enforceable unless they are subject to a "generally applicable contract defense." Order at 4, ECF No. 39 (quoting *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016)). That threshold question must be decided by the Court before it can compel arbitration. *Id*. It is black-letter law that when a breaching party attempts to enforce a contract, the non-breaching party may present as a "generally applicable contract defense" that the other parties' breach excuses performance. Having elected to participate in contractually forbidden judicial proceedings, Postmates no longer has the right to deprive Plaintiffs of a judicial forum.

The relevant facts are undisputed.[1] For purposes of this motion, Plaintiffs and Postmates agree that enforceable arbitration agreements exist between the parties, and that the agreements contain class- and representative-action waivers[2] that prohibit either party from so much as <u>participating</u> in a class-action. Plaintiffs and Postmates agree that the Class Waivers are material terms to the arbitration agreement. And Plaintiffs and Postmates agree that Postmates entered into a class-action settlement that includes Plaintiffs unless they affirmatively opt out.

The only real dispute is a legal one. Postmates argues that because Plaintiffs will have an opportunity <u>in the future</u> to submit an opt-out request, there are no repercussions for Postmates's <u>ongoing</u> decision to materially breach its contractual obligations. That position is contrary to basic contract law and common sense. Postmates's arbitration agreement is expressly <u>mutual</u>—both Plaintiffs <u>and</u> Postmates agree not to participate in any class proceedings. Because a plaintiff can <u>always</u> opt out of any class-action settlement, Postmates's position is tantamount to claiming it can <u>never</u> breach its promise not to participate in a class action.

But courts must construe a contract in a way that gives meaning to its terms. If Postmates's

---

[1] Postmates spills a great deal of ink discussing Plaintiffs' counsel and other actions involving Postmates couriers who are represented by Plaintiffs' counsel. Those baseless smears are false, discourteous, and unprofessional. Plaintiffs will not address the many factual inaccuracies here because Postmates's wild rhetoric is irrelevant to the issues before this Court.

[2] Referred to collectively as the "Class Waivers."

express promise not to participate in a class action with respect to Plaintiffs means anything at all, it must mean that Postmates cannot do what it has done here. Namely, Postmates cannot attempt to release Plaintiffs' claims in a manner that requires them to jump through the hoops that class proceedings create to preserve claims that are supposed to be resolved exclusively in arbitration. Postmates is in breach of a material term of the parties' arbitration agreement. And Postmates's breach exists regardless of whether Plaintiffs can avoid some of the consequences of that breach by taking steps that they have a contractual right to avoid.

This Court should deny Postmates's motion to compel arbitration. Alternatively, if this Court is inclined to re-issue its order compelling arbitration, it should protect its order by requiring Postmates to stop participating in a parallel state-court proceeding that is contrary to the Court's order to resolve the parties' disputes only in individual arbitration.

## II.   ARGUMENT

### A.   Whether Postmates Has Materially Breached the Arbitration Provision Is a Threshold Issue That Must Be Decided by This Court.

This Court granted Postmates's motion to compel arbitration because each applicable version of the Fleet Agreement contained a Mutual Arbitration Provision[3] delegating threshold issues of arbitrability to an arbitrator. *See* Order at 5, ECF No. 39. The Court therefore held that the question of whether Plaintiffs validly opted out of the MAP in the 2019 Fleet Agreement should be decided by an arbitrator. *Id*. In reaching that conclusion, the Court stated that the "delegation clause must be given effect as long as (1) the parties have 'clearly and unmistakably' manifested their intent to delegate arbitrability, and (2) the delegation clause is not otherwise unenforceable because of 'some other generally applicable contract defense, such as fraud duress, or unconscionability.'" Order at 4, ECF No. 39 (quoting *Mohamed*, 848 F.3d at 1209) (emphasis added). The Court noted that the delegation clause was enforceable because Plaintiffs had not "alleged any other generally applicable contract defenses." *Id*.

Because the Court previously ordered that an arbitrator must decide whether Plaintiffs validly opted out of arbitration, Postmates now argues that an arbitrator must <u>first</u> decide that issue.

---

[3] Referred to as the "MAP" or "MAPs."

Def.'s Opp'n at 10, ECF No. 53. But that argument flips on its head the two-part analysis articulated by this Court and *Mohamed*. The proper analysis requires the Court to analyze whether a "generally applicable contract defense" applies, such that the delegation clause is not enforceable, <u>before</u> compelling arbitration. *Mohamed*, 848 F.3d at 1209. If Postmates's breach of contract defeats application of the MAP and the delegation clause, the Court cannot send any dispute to arbitration.

A material breach by one contracting party is a "generally applicable contract defense" to the non-breaching party's performance under the contract. *See, e.g.*, *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) (A "bedrock principle of California contract law is that 'he who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'" (quoting *Pry Corp. of Am. v. Leach*, 2 Cal. Rptr. 425, 429–30 (Cal. App. 1960)).); *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011) ("When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." (citing *De Burgh v. De Burgh*, 39 Cal. 2d 858, 863 (1952); 1 Witkin, Summary of Cal. Law, Contracts §§ 813, 814 at 906 (10th ed. 2005))).

Since the parties finished briefing Postmates's motion on July 5, 2019, ECF No. 30, and after the Court issued its Order on October 3, ECF No 39, the *Rimler* settlement plaintiffs moved for preliminary approval of their class-action settlement with Postmates, Keller Decl. ISO Mot. for Reconsideration ¶ 3, ECF No. 50 ("Keller Decl."). In light of the *Rimler* class settlement, Plaintiffs have now raised a "generally applicable contract defense": that Postmates's breach of two material terms of the MAP—the Class Waivers—relieves Plaintiffs from having to perform their obligations under the MAP and the delegation clause within it. *See* Pls. Opening Br. at 7–11. Under *Mohamed*, the Court must decide Plaintiffs' contract defense to determine whether the arbitration agreement—and therefore the delegation clause—is even enforceable.

**B.    Postmates Has Materially Breached the MAP.**

The MAP's prohibition on class and representative actions is broad and unequivocal, which is why Postmates strains to avoid the relevant text of that provision. It prohibits both Plaintiffs

and Postmates from even participating in a class proceeding:

> Postmates and You <u>mutually</u> agree that any and all disputes or claims between the Parties will be resolved in individual arbitration. The Parties further agree that by entering into this Agreement, <u>they</u> waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action, or <u>to participate</u> in any class and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action ('Class Action Waiver').

2019 Fleet Agreement § 10B.ii (emphases added); *see also id*. § 10B.iii (similar "Representative Action Waiver").[4] Time and again, Postmates has argued that the Class Waivers are material terms of the MAP. Opening Br. at 3, 4, 8, 9. And nowhere in its opposition does Postmates argue that the Class Waivers are not material. *See generally* Def.'s Opp'n, ECF No. 51.[5] Despite this clear, material promise, Postmates has agreed to participate, and is actively participating, in a proposed class-action settlement that includes Plaintiffs. Ex. B to Keller Decl., Settlement Agreement §§ 2.36, 2.41 (Jan. 21, 2020), ECF No. 50-2. Because Postmates has materially breached the MAP, it cannot compel Plaintiffs to arbitrate. *Brown*, 430 F.3d at 1010.

**1.  Postmates Is Participating In A Prohibited Class- And Representative- Action.**

When interpreting contracts, courts must give words their plain meaning. *Catanzarite v. Wells Fargo Bank, N.A.*, No. E053136, 2012 WL 2136142, at *6 (Cal. Ct. App. June 13, 2012). "To participate" means "to take part of." *Participate Definition*, MERRIAM-WEBSTER.COM, available at https://kl.link/2Xdhheh (last accessed on April 7, 2020). It does not require success or even completion. *Id*. Yet Postmates argues that it could not have "participated" in a class-action because the settlement has not yet been approved. Def.'s Opp'n at 10, ECF No. 51. That assault on language is nonsense.

It is not relevant that the settlement class has not yet been certified, because it is undisputed

---

[4] The prior versions of the MAP all contained substantially similar language. *See* Pls.' Opening Br. at 3, ECF No. 49.

[5] Postmates refers to the doctrine of waiver, arguing that Plaintiffs must show "prejudice." Def.'s Opp'n at 12, ECF No. 51. But Plaintiffs have not asserted a wavier defense. Plaintiffs argue that Postmates has materially breached the MAP. Prejudice is assumed by the materiality of the breach. But even so, Plaintiffs clearly will be prejudiced by Postmates's breach if they are compelled to arbitrate while Postmates is contemporaneously allowed to resolve their claims in a contractually prohibited class-action settlement in court.

that Postmates has "taken part" in (i) a mediation to reach a class-action settlement, Keller Decl. ¶ 3, ECF No. 50; (ii) a settlement agreement that would resolve Plaintiffs' claims in a class; and (iii) promoting the class action by filing numerous pleadings in support of the class settlement, *see e.g.*, *Rimler v. Postmates Inc.*, CGC-18-567868, Def. Postmates Inc.'s Statement ISO (Super. Ct. San Fran. Cty. Sept. 25, 2019) ("Defendant Postmates Inc. ('Postmates') supports Plaintiffs' request for preliminary approval of the proposed class action settlement . . . .").

Not even Postmates believes its made-for-litigation redefinition of "to participate in." When a courier brings a <u>putative</u> class action lawsuit, Postmates always argues that the mere filing of a class-action <u>complaint</u> violates the Class Waivers. The breach does not depend on certification—or, at least, not when that position was convenient for Postmates. Pls.' Opening Br. at 4–5, ECF No. 49. In turn, courts have enforced Postmates's MAP and Class Waivers before certification by granting Postmates's motions to send putative class actions to arbitrations. *Id*. at 4–5, 8–10. The absurdity of Postmates's position means that the *Rimler* court's decision to certify a class—at Postmates's behest—will immediately create the material breach that Postmates now claims is unripe. To state that argument is to refute it.

**2.     The Class-Action Settlement Includes Plaintiffs.**

It is undisputed that the proposed class settlement in *Rimler* includes Plaintiffs unless they affirmatively opt out of it. Settlement Agreement §§ 2.36, 2.41, 7.1, 7.4, ECF No. 50-2. In other words, Postmates has entered into a class-action settlement that resolves Plaintiffs' claims outside of individual arbitration.

In arguing that the class settlement is not a breach of the MAP, Postmates essentially claims that, because Plaintiffs can later choose to participate in or opt out of the settlement, Postmates could not possibly have breached the agreement <u>today</u>. But that position renders Postmates's contractual promise meaningless.

First, Postmates argues that any breach is speculative because we do not know whether Plaintiffs will participate in the settlement or opt out. Opp'n at 10, ECF No. 51. But the only issue that is speculative is whether Plaintiffs will later (a) <u>waive</u> Postmates's breach by participating in the settlement (and agreeing in writing to modify the Class Waivers in the MAP) or (b) mitigate

the harm of Postmates's breach by opting out of the settlement (and removing themselves from the class). That Plaintiffs might later have an opportunity to waive or mitigate the consequences of Postmates's breach has no bearing on whether Postmates is <u>currently</u> in breach of the MAP. Indeed, if Postmates's argument were correct, there could <u>never</u> be a breach of contract because the non-breaching party can always choose in the future to waive the breach or agree to some alternative that would mitigate the harms from the breaching party's conduct. That is not the law.

Second, Postmates argues that it cannot possibly have breached the MAP with Plaintiffs because Plaintiffs can opt out of the class settlement. But absent class members always retain the right to opt out of a class action. Postmates's position is tantamount to the absurd view that it can <u>never</u> breach its promise because plaintiffs can always opt out of the judicial proceeding Postmates promised not to drag them into in the first place. But "adopting an interpretation that would render a term meaningless would violate contract interpretation" rules. *Bada Int'l, Inc. v. ChungHo Nais, Co., No*. SACV1301110JVSANX, 2015 WL 11199073, at *4 (C.D. Cal. July 21, 2015) (citation omitted). Postmates's interpretation would render the Class Waiver meaningless.

Further, Postmates attempts to show it is not breaching the MAP by providing an example where it "agrees with Couriers C through Z to resolve their disputes with Postmates in a class or collective manner" but "Couriers A and B decline." Defs.' Opp'n at 12, ECF No. 43. Postmates goes on to state that Postmates cannot have breached the MAPs with Couriers A and B by entering a class-action settlement with Couriers C through Z. *Id*. That illustration would be accurate if the *Rimler* settlement were an <u>opt-in-only settlement</u>, and only those couriers who submitted a claim (in Postmates's example, Couriers C through Z) were included. But Postmates's example only underscores how it has eschewed the proper means of pursuing a class settlement here. Postmates could have pursued an opt-in-only settlement, under which the only couriers in the class would be those who waive the Class Waivers. But *Rimler* is a claims-made <u>and</u> opt-out settlement. Postmates will have presumptively resolved the claims of all the couriers, including Couriers A and B, unless they timely mail an opt out form signed in wet ink. Settlement Agreement §§ 2.36, 2.41, 7.1, 7.4, ECF No. 50-2. Plaintiffs are not asserting that Postmates breached the MAP's Class Waivers because it has entered into a class-action settlement with other couriers. Postmates

6
REPLY ISO MOTION FOR RECONSIDERATION
CASE NO 4:19-cv-03046-JST

breached because Postmates is participating in a class-action that includes <u>them</u>.

### 3. The Class-Action Settlement Is Not a Permissible Offer to Modify the MAP.

Finally, Postmates's attempt to recast the settlement as merely an offer to modify the MAP is equally unsound. Postmates argues that it is not a breach of contract to offer to modify the contract, and as offeror it can set silence or inaction as a mode of acceptance. Def.'s Opp'n at 12–14, ECF No. 51. But that misapprehends the Fleet Agreement and the law regarding contract modification.

To start, the Fleet Agreement provides that it may only be modified in writing, signed by both parties. 2019 Fleet Agreement § 12A. The Fleet Agreement does not allow for silence or inaction to serve as a mode of acceptance of an offer to modify. *Id*. Further, Cal Civ. Code § 1698 governs how written contracts can be legally modified. Sections 1698(a) and (c) provide that a written contract may be modified in writing, or "[u]nless the contract expressly provides otherwise" (as the Fleet Agreement does), it may be modified orally as long as the modification is supported by new consideration[6] and the statute of frauds is satisfied. *Cf. Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 116 (2004) (modification of arbitration agreement was "ineffective" because the "arbitration agreement is a fully integrated contract"). There is no exception for modifying a written agreement with an express written modification clause through inaction or silence. It is therefore unsurprising that the two cases Postmates cites for the proposition that "silence or inaction operates as an acceptance where the offeror has stated or given the offeree reason to understand that assent may be manifested through silence or inaction," Def.'s Opp'n at 13, ECF No. 51, involved new contract offers and did not involve offers to modify—let alone offers to modify fully integrated written agreements that require all modifications be signed and in writing. *See Golden Eagles Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372 (1993); *In re W. Asbestos Co.*, 416 B.R. 670 (N.D. Cal. 2009).[7] It is unclear how, even under the case law

---

[6] To make matters worse, if Plaintiffs were unable for whatever reason to submit a claim or opt out of the *Rimler* settlement, they would be bound by the modification (and release all their claims) for <u>no consideration whatsoever</u>.

[7] Postmates also argues that class-action settlements involving parties with arbitration agreements are routinely approved. The issue of whether the court in *Rimler* should approve the settlement because other courts have approved settlements with arbitration agreements is not

(cont'd)

Postmates cites, an offeree could possibly have "reason to understand" her silence would result in acceptance of the offer to modify when that understanding directly contradicts the existing understanding between the parties.

The Fleet Agreement and California law do not allow the MAP to be modified through inaction or silence, Postmates's attempt to recast its breach of contract as an offer is unavailing.

### C. This Court Can Require Postmates to Comply With the MAP.

The Federal Arbitration Act ("FAA") and Supreme Court precedent require courts to enforce arbitration agreements "in the manner provided for in such agreement." 9 U.S.C. § 4; *see also Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). Contrary to Postmates's assertions, all Plaintiffs ask of this Court (if it intends to re-order arbitration) is that the Court require all parties to arbitrate "in the manner provided for" in the MAP, which includes unambiguous Class Waivers.[8] Postmates raises two arguments regarding this Court's ability to modify its order: (1) that Plaintiffs cannot seek to enforce the arbitration agreements of other couriers; and (2) that the Court cannot issue an order that would affect the *Rimler* settlement because such an order would be a prohibited injunction under the Anti-Injunction Act. Opp'n at 15, ECF No. 50.

As to Postmates's first argument, again, Plaintiffs are not concerned with Postmates's class settlement agreement as it pertains to other couriers. *See supra* at 5–7. Plaintiffs seek an order that, if they are required to resolve their claims through individual arbitration, Postmates is prohibited from simultaneously settling <u>their</u> claims in a class settlement.

Second, Plaintiffs are not asking for a separate injunction. Plaintiffs merely ask that, if this Court intends to order arbitration, it enter an order compelling arbitration in accordance with the terms of the parties' MAP. That request should be uncontroversial, as that is the only type of order the Court may issue under the FAA. 9 U.S.C. § 4. Further, even if Plaintiffs' request were

---

before this Court. The only relevant question is whether, by participating in *Rimler*, Postmates has materially breached the MAP with Plaintiffs and can no longer compel Plaintiffs to arbitrate.

[8] Postmates resorts to semantics when it argues that such a request exceeds this Court's order granting leave for Plaintiffs to file a motion to reconsider, because the Court allowed Plaintiffs only to brief a motion to reconsider and not a motion to modify. That distinction does not hold water. A motion to reconsider an order is a motion to modify that order.

tantamount to a request for distinct injunctive relief, Plaintiffs meet all the elements for injunctive relief here.

A motion to compel arbitration is an injunction. This Court has already held that, so long as the MAP is enforceable, the injunction should issue. The only remaining question is whether this Court has authority to fashion an order that would protect it from a parallel state-court proceeding that would interfere with an order compelling the parties to resolve their claims only in individual arbitration. Courts have routinely answered that question in the affirmative, recognizing that the strong federal policy in favor of arbitration allows courts to enter orders that enjoin state-court proceedings that conflict with arbitration under the third exception of the Anti-Injunction Act: "to protect or effectuate its judgments," 28 U.S.C. § 2283. *See Circuit City Stores v. Adams*, No. C98-0365 CAL, 1998 WL 1797183, at *3 (N.D. Cal. May 4, 1998) ("The argument is made that this would be contrary to the Anti-Injunction act. However, I think it's clear from the U.S. Supreme Court Decision in *Moses Cohn*, that the anti-injunction act does not prevent a federal court to—from entertaining a petition to compel arbitration, and that's true even though the underlying suit—the underlying dispute to be arbitrated is one pending in state court."); *see also Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 714. n.3 (5th Cir. 2002) ("Because an order compelling arbitration entered in an independent proceeding is a final decision, it also qualifies as a 'judgment' under the Anti-Injunction Act."); *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002) (an order compelling arbitration and enjoining a state proceeding was "necessary to protect the final judgment of the district court on this issue.").

Should this Court re-issue its order compelling arbitration, it should treat its order just like any other motion to compel where there are parallel state-court proceedings that would interfere with arbitration. It should do so by modifying its order to ensure that if Plaintiffs must abide by the MAP and arbitrate, Postmates must likewise abide by the MAP and cease participating in the *Rimler* class action so long as that action purports to resolve Plaintiffs' claims outside of arbitration.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration should be granted.

| | |
|---|---|
| Dated: April 10, 2020 | Respectfully submitted, |
| | /s/ Ashley Keller |
| | Ashley Keller (*pro hac vice*) |
| | ack@kellerlenkner.com |
| Keith A. Custis (#218818) | Travis Lenkner (*pro hac vice*) |
| kcustis@custislawpc.com | tdl@kellerlenkner.com |
| CUSTIS LAW, P.C. | Marquel Reddish (*pro hac vice*) |
| 1875 Century Park East, Suite 700 | mpr@kellerlenkner.com |
| Los Angeles, California 90067 | KELLER LENKNER LLC |
| (213) 863-4276 | 150 N. Riverside Plaza, Suite 4270 |
| | Chicago, Illinois 60606 |
| | (312) 741-5220 |
| | |
| | *Attorneys for Plaintiffs* |